FRED J. MOEHLENBROCK, AS ADMINISTRATOR OF THE ESTATE OF ALBERT R. MOEHLENBROCK, DECEASED v. PARKE, DAVIS & COMPANY.

JOHN B. ROSENWALD AND ANOTHER, APPELLANTS.[1]

February 6, 1920.

No. 21,593.

**Negligence of surgeon in administering ether.**

1. The evidence in this case was sufficient to sustain a finding that defendants, surgeons, were negligent in administering to a patient ether that was unfit for use, and in their care after the ether was administered.

**Skill required of surgeon — careless use of anaesthetic.**

2. The skill and diligence which the law requires of a physician or surgeon is such as is usually exercised by others of the same school. He is not ordinarily liable for mistake of judgment, unless it is so marked as to constitute negligence. If a surgeon persists in the use of an anaesthetic, after warning which would impel one of reasonable prudence to desist, he should be held to answer for the consequences.

**Evidence of malpractice —case followed.**

3. Expert testimony for plaintiff is not always necessary in order to make proof of malpractice. Rule stated in Moratzky v. Wirth, 74 Minn. 146, followed.

**Opinion of experts not conclusive, when.**

4. Other alleged errors present no ground for reversal.

After the former appeal reported in 141 Minn. 154, 169 N. W. 541, the motion of defendants Rosenwald and Andrews in the district court for Blue Earth county for judgment notwithstanding the verdict or for a new trial was denied, Comstock, J. From the judgment entered February 24, 1919, and from the order denying their motion for judgment notwithstanding the verdict or for a new trial, defendants Rosenwald and Andrews appealed. Affirmed.

[1]Reported in 176 N. W. 169.

*Kerr, Fowler, Schmitt & Furber,* for appellants.
*Leach & Leach* and *Daniel Carmichiel,* for respondents.

HALLAM, J.

Plaintiff's intestate, a young man in good general health, submitted to an operation, under the influence of ether, for the removal of his tonsils. The ether was administered and the operation performed by defendants Andrews and Rosenwald. The ether used was manufactured by defendant Parke, Davis & Company. Deceased never recovered from the administration of the ether, and died as a result of it in a few hours. That there was fault somewhere was clear. Plaintiff charged the defendant surgeons with malpractice and defendant Parke, Davis & Company, with negligently putting on sale ether unfit for use. Plaintiff had a verdict against all defendants. A former appeal was taken by defendant Parke, Davis & Company [141 Minn. 154, 169 N. W. 541]. This court held that there was evidence to sustain a finding that the ether was unfit for use; that its use was dangerous to life; that defendant Parke, Davis & Company, was negligent in putting it on sale, and that its use was a proximate cause of decedent's death. This appeal was then taken by defendants Andrews and Rosenwald.

1. Appellants contend that there is no evidence to show malpractice. Respondent makes various contentions. These two appeal to us. It is contended that the doctors early discovered the pernicious effect of the ether, but negligently persisted in its use, and that they neglected to give the patient proper care after the operation. We think there is evidence to sustain both contentions.

As to the first proposition the appellants themselves gave this testimony:

Doctor Andrews said, during the operation: "The patient came out rather quickly from the ether so I administered a little bit more, but I noticed that it was hard to fully relax the patient * * * he seemed to resist every time the doctor tried to remove the tonsils, and I did not like to push the anaesthetic in this instance, because of what I had observed, that when I did push it a little the patient became blue or a little cyanotic you might say, and I would raise the mask until that condition would pass away, and then repeat the giving of the anaesthetic, so

the doctor could go on with his work, but that is the way the patient acted during the whole time of the administration of the anaesthetic."

Doctor Andrews further testified in substance that, if a patient is on the table, having ether administered, and develops a cyanotic condition and if that cyanotic condition proceeds and increases as the ether is being administered, it is dangerous to continue it. When that condition appears it is a signal of warning to a physician that, if the ether is persisted in, it is dangerous, and if persisted in too much it will cause the death of the patient.

Doctor Rosenwald said: "We had that difficulty during the operation * * * and I think the trouble was of such a nature that if the operation had not been partly completed and it had been a long operation I would not have finished it, I would have waited." Question: "If it had been an operation that would have taken half or three-quarters of an hour, would you have tried to finish it?" Answer: "No sir." Doctor Rosenwald further testified that the usual tonsil operation is a short operation—perhaps five or ten minutes. In this case there is evidence that the administration of ether extended over three-quarters of an hour.

The alleged want of care after the operation is in the fact that very soon after the operation, cyanosis appeared and the patient was in a very critical condition until about noon when he died, and that appellants neglected to give him the constant care which the critical nature of his case required.

2. The skill and diligence which the law requires of a physician or surgeon is such as is usually exercised by others of the same school. Getchell v. Hill, 21 Minn. 464; Martin v. Courtney, 75 Minn. 255, 77 N. W. 813. He is not necessarily liable for malpractice because of a bad result. He must often act promptly, upon his best judgment, and he is not liable for injuries arising, without negligence, from honest errors of judgment. Staloch v. Holm, 100 Minn. 276, 111 N. W. 264, 9 L.R.A. (N.S.) 712; McGray v. Cobb, 130 Minn. 434, 152 N. W. 262, 153 N. W. 736. But this is an exception to general rules of negligence and the exception is not absolute. Every act of his is in a sense an exercise of judgment and usually of honest judgment. Yet it may be negligent. He might be honest in his judgment that he could safely leave certain details to an assistant, and yet be liable for negligence in doing so. Walk-

er v. Holbrook, 130 Minn. 106, 153 N. W. 305. He is liable if his mistake of judgment is so gross as to constitute negligence. 5 Thompson, Neg. § 6719; West v. Martin, 31 Mo. 375, 80 Am. Dec. 107; Dubois v. Decker, 130 N. Y. 325, 29 N. E. 313, 14 L.R.A. 429, 27 Am. St. 529. He is bound to observe plain physical laws, or, as stated in Staloch v. Holm, 100 Minn. 276, 111 N. W. 264, 9 L.R.A.(N.S.) 712, he may be liable when his wrong concerns physical facts and is governed by ordinary principles of intelligence. If a surgeon persists in the use of an anaesthetic after warning which would impel one of reasonable prudence to desist, he should be held to answer for the consequences.

3. Appellants insist that, since no expert witness testified that appellants did or omitted to do anything contrary to good surgery and practice, it was the duty of the court to direct a verdict in their favor. We do not concur in this contention. From the testimony of the defendant surgeons, and from common knowledge of physical facts and laws, the jury might infer that, if appellants had desisted from the use of the ether at the first sign of danger, decedent's life might have been spared, and that reasonable prudence required them to do so.

It is only in cases where the evidence and the facts to be deduced therefrom, are undisputed, and the case concerns a matter of science or specialized art, or other matters of which a layman can have no knowledge, that the opinion of experts is conclusive. Moratsky v. Wirth, 74 Minn. 146, 76 N. W. 1032. This is not such a case.

For similar reasons the testimony of Doctor Condit exonerating appellants is not conclusive.

4. Other alleged errors do not seem to us serious.

It was not error to receive testimony of Doctor Liedloff as to the effect of the use of ether from the same container on the following day. This testimony tended to show the character of the ether.

The instructions of the court to the jury do not contain any reversible error.

Order affirmed.