# LYMAN G. CLARK, AS ADMINISTRATOR OF THE ESTATE OF JEM CLARK, DECEASED v. JAMES W. GEORGE.[1]

January 14, 1921.

No. 21,925.

**Physician not an insurer of correct diagnosis or correct treatment — questions for jury.**

A physician does not insure either correct diagnosis or correct treatment, but he is required to possess the skill and learning which is possessed by the average member of his school of the profession in good standing in his locality and to apply that skill and learning with reasonable care. If he fails in this, he is negligent and may be held liable for injury resulting therefrom. Defendant diagnosed a case of diphtheria as quinsy, and on two occasions lanced the throat of the patient. The patient died soon thereafter. Under the evidence, the question of defendant's negligence in diagnosis and treatment and the question whether such negligence caused the death should have been submitted to the jury.

Action in the district court for Hennepin county to recover $7,500 for the death of plaintiff's decedent. The answer alleged that notwithstanding defendant exercised reasonable care and skill in treating plaintiff's wife, he was unable to cure her of the ailment from which she was suffering, and on or about May 2, 1918, she died. The case was tried before Waite, J., who at the close of the testimony granted defendant's motion for a directed verdict. From an order denying his motion for a new trial, plaintiff appealed. Reversed.

*Lewis Severance,* for appellant.

*Dille, Hoke, Krause & Faegre,* for respondent.

HALLAM, J.

Deceased, Jem Clark, a young woman of 34, and wife of plaintiff, Lyman G. Clark, was taken ill on the evening of April 30, 1918. Her throat was sore and swollen and her temperature somewhat above nor-

[1]Reported in 180 N. W. 1011.

mal. Defendant diagnosed her case as quinsy, lanced her throat first on one side and then on the other, said probably some pus would come and that she would be better in the morning. In the morning defendant called again, asked if any pus had come, and was told by deceased there had not, and he lanced her throat again. Deceased could not then speak loud, but whispered to defendant to look at her husband's throat. He did so, and immediately said: "You have got diphtheria, and that is what is the matter with her." He then took a culture, went away and in 15 or 20 minutes came back and again pronounced the case of deceased as diphtheria. He then changed his treatment and administered antitoxin. He continued this treatment, but deceased died on the following day. Plaintiff, as administrator, commenced this action to recover damages for malpractice. At the close of plaintiff's evidence, defendant rested without introduction of testimony, moved for a directed verdict and the motion was granted. Plaintiff appeals from an order denying a motion for a new trial.

After the death of deceased, defendant made a death certificate, stating that the cause of death was diphtheria with general oedema of the pharynx. In a memorandum, submitted to the health department with the culture on the day before her death, he gave the diagnosis as suppurative tonsilitis. From the statement in the death certificate and all the other testimony in the case, we think a jury might fairly infer that deceased was suffering from diphtheria from the beginning, and it is doubtful whether they could infer that there was any other ailment.

Plaintiff called, as an expert, Doctor Dewar. This witness had not seen deceased and his testimony was wholly opinion evidence. He testified that it is not good practice to lance a throat infected with diphtheria, or, in other words, that "diphtheria should not be cut;" that the effect of cutting in case of diphtheria is to spread the infection through the system, and there is evidence that defendant admitted that "sepsis" or infection was the cause of decedent's death. Dr. Dewar testified that, in his opinion, the lancing of the patient's throat was not good practice and that that operation was a contributing cause of death. In case of doubt as to the nature of the throat trouble,

he said the proper thing to do is to take a culture from the throat and have it examined, and that it is not good practice to use the knife without first determining whether there is something in the disease of the throat which would render that dangerous. The evidence makes it clear that diphtheria can be easily detected by taking a culture and having it examined.

The principles governing the liability of a physician for malpractice are well settled in this state. They have been stated in several cases. A physician is not ordinarily liable for error of judgment in a doubtful case. He does not insure either correct diagnosis or correct treatment, but he is required to possess the skill and learning which are possessed by the average member of his school of the profession in good standing in his locality, and to apply that skill and learning with reasonable care. If he fails in this, he is negligent and may be held for injury resulting therefrom. Getchell v. Hill, 21 Minn. 464; Martin v. Courtney, 75 Minn. 255, 77 N. W. 813; Staloch v. Holm, 100 Minn. 276, 111 N. W. 264, 9 L.R.A.(N.S.) 712; McGray v. Cobb, 130 Minn. 434, 152 N. W. 262, 153 N. W. 736; Viita v. Fleming, 132 Minn. 128, 155 N. W. 1077, L.R.A. 1916D, 644, Ann. Cas. 1917E, 678; Moehlenbrock v. Parke, Davis & Co. 145 Minn. 100, 176 N. W. 169; Harju v. Allen, 146 Minn. 23, 177 N. W. 1015. 30 Cyc. 1578.

If the above testimony stood alone, we think there would be no question of its sufficiency to sustain a verdict that defendant was negligent, both in the manner in which he proceeded to diagnose the case and in the treatment administered.

The doubt in the case arises from this fact: A sister of deceased, who was called as a witness for the plaintiff, when asked if any pus came out at the time of the first lancing, answered: "A little." The testimony of Doctor Dewar was that it is always proper to lance a pus abscess, even if diphtheria is present.

We are of the opinion that, notwithstanding this testimony, the question of defendant's negligence was for the jury.

In the first place, in view of the testimony above referred to, as to the statement made by the doctor at the time of the first lancing, and the statement of deceased next morning that no pus had come, the fact

that the disease really proved to be diphtheria, and that there is no claim that pus is a result of diphtheria, the above testimony of the sister is not conclusive of the existence of a pus abscess.

In the next place, the testimony of Doctor Dewar is to the effect that even if there were a pus abscess, the lancing of the throat on the second morning was not good practice. He said: "You would not have to lance an abscess a second time. If you lance it once, you remedy it." Then followed this examination:

Q. "Is it not true that frequently it needs a second lancing in pus abscess?

A. Not if you get to the abscess first.

Q. Are you able to get to it freely to get all the pus out the first time?

A. If you lance an abscess the first time, you need not lance it a second time.

Q. Never?

A. Not if you do it right."

A jury could infer that defendant should have known, on the occasion of the second call, that his first diagnosis must have been wrong, and that to lance again might bring disastrous results.

This testimony, taken in connection with the testimony above referred to, that the lancing of the throat on the second occasion was one of the contributing causes of death, seems to us to make the question of defendant's negligence proper for submission to the jury.

The question whether the evidence is sufficient to establish the fact that defendant's negligence was the cause of the death of deceased is not free from doubt. It was incumbent on plaintiff to prove this fact, that is, to prove that but for the negligence of defendant, death would not have occurred. Briggs v. Minneapolis St. Ry. Co. 52 Minn. 36, 53 N. W. 1019; Gores v. Graff, 77 Wis. 174, 46 N. W. 48. If the evidence leaves the cause of death a matter of conjecture, defendant was entitled to a directed verdict. Plaintiff is, however, not required to prove causal connection by direct evidence. If circumstantial evidence furnishes a reasonable basis for the inference that the negligence of defendant was the cause of death, the case should be submitted to the

jury. Moores v. Northern Pac. Ry. Co. 108 Minn. 100, 121 N. W. 392.

Dr. Dewar testified that defendant's act in lancing the throat was a contributing cause of death. He did not testify that decedent would not have died of diphtheria. Of course diphtheria is a serious ailment and sometimes causes death, and death would not have resulted had there been no diphtheria. Still the operation may have been the proximate cause of death, if, by aggravating the diseased condition, it produced death. Purcell v. St. Paul City Ry. Co. 48 Minn. 134, 50 N. W. 1034, 16 L.R.A. 203; Grainger v. Still, 187 Mo. 197, 85 S. W. 1114, 70 L.R.A. 49; Gates v. Fleischer, 67 Wis. 504, 30 N. W. 674. In view of the natural tendency of the lancing to spread infection and of the evidence that deceased died of sepsis or infection in so short a time thereafter we are of the opinion that the jury might infer that the proximate cause of death was the surgical act.

Order reversed.


HOLT, J. (dissenting).

I dissent. Plaintiff's wife died within 48 hours after the doctor was first called to treat her. It was at midnight. He was informed that she was subject to attacks of quinsy. He examined the throat and found a swelling which was lanced to let the pus escape. Next morning he evidently discovered that he was mistaken in the diagnosis. He then administered the proper remedy for diphtheria.

Even conceding that the jury had sufficient evidence upon which to find negligence in the lancing of the swelling without first taking smears from the throat to ascertain that diphtheria was not present, and also that such lancing contributed to the death, I fail to find any evidence that would justify them in finding that proper diagnosis and treatment, after defendant was called, could have saved the woman's life. I think such evidence essential to a recovery. Unless medical skill could have prevented death, defendant should not be held in damages. This view accords with what is held in Red Cross Medical Service Co. v. Green, 126 Ill. App. 214; Yaggle v. Allen, 24 App. Div. 594, 48 N. Y. Supp. 827; State v. Housekeeper, 70 Md. 162, 16 Atl. 382, 2 L.R.A. 587, 14 Am. St. 340, and is virtually the charge given by the trial court in Braunberger v. Cleis, 4 Am. Law Reg. (N.

S.) 587. I think the court below was right in directing a verdict for defendant.

QUINN, J. (dissenting).
I concur in the dissent.