# O. H. NELSON v. NICOLLET CLINIC AND OTHERS.[1]

December 31, 1937.

No. 31,397.

[1]Reported in 276 N. W. 801.

*Louis H. Joss, Walter A. Schweppe,* and *Arthur LeSueur,* for appellant.

*Cobb, Hoke, Benson, Krause & Faegre* and *Wright W. Brooks,* for respondents.

PETERSON, JUSTICE.

Plaintiff sued defendants for malpractice and appeals from an order denying his motion for new trial after a directed verdict in favor of defendants.

Plaintiff was injured in an automobile accident on December 13, 1933, and was taken to Eitel Hospital, which is operated by the defendant clinic. Defendant Dr. Jones was assigned to plaintiff's case and undertook to treat plaintiff. It is claimed that defendant Dr. Strachauer assisted him. Dr. Jones found that plaintiff had sustained a fracture of the femur of the right leg where it goes into the hip socket, which is a very serious bone injury, and that because of plaintiff's condition it was inadvisable to operate on him until December 18, on which date he set the fracture in what is known as a Whitman cast. This cast was made of plaster of Paris lined with padding. It inclosed part of the body, the upper part of the left leg, and the entire right leg, including all of the foot except the toes. The object of the cast is to get the bones in place and hold them there until the fracture heals. When the cast was applied plaintiff was informed that it would cause him discomfort and some pain. It caused him severe discomfort, pain, and distress, of which he complained continually. On December 24 the cast was removed and a second cast put on. Plaintiff told the doctors that he did not want the cast to cover his foot because of the severe pain which the first one had caused him. But the doctors applied the second cast in the same manner as the first one. It was necessary to have the cast go over the foot to hold the leg rigid so there would be no rotating which would throw the broken bones out of place and prevent a union by healing. This cast also caused plaintiff severe pain and discomfort, about which he continually complained. On January 11, 1934, it was ascertained that the part of the cast over the foot could be removed without preventing the

bones from healing, and that part of the cast was removed on that date. It was then discovered that plaintiff had a pressure sore on the heel, caused by the interference of the cast with the circulation of the blood. It was necessary then to put the leg in a sling, known as a Jefferson stirrup so that the pressure sore would heal. The rest of the cast was removed on March 24, 1934. Plaintiff remained in the hospital until sometime in October, 1934. During all of the time until June he was convalescing and making progress.

Plaintiff claims that defendants were guilty of malpractice because the cast was set too tight, thereby restricting circulation of blood so as to cause a pressure sore on the heel of the right foot, which became infected; that plaintiff experienced most severe and extreme pain because the cast was causing the pressure sore, of which he complained; that if defendants had heeded his complaints they would have discovered that the cast was causing the sore and pain and could have acted on knowledge thus obtained to prevent the sore, pain, and other injuries that resulted; that defendants ignored the complaints and did not administer proper treatment; that the sore became infected; that the infection spread to the great toe, thence to other parts of the foot, knee, hip, and arm. About June 15 it was discovered that he had an infection in the great toe of the right foot. It was necessary to lance the toe. This did not cure his condition; the infection spread from the toe up to the knee, the hip, and arms, and it became necessary to amputate part of the toe in order to remove the infection. The operation was successful in accomplishing this purpose. In addition to the heel sore, pain, and suffering, he claims loss of function in the other toes and large part of the use of the right foot, stiffness of the right knee, and arthritis. No claim is made that a good result in setting the bones was not achieved.

Plaintiff's medical expert was asked if he knew whether it is regular procedure for physicians and surgeons not to investigate a Whitman cast for several days after complaints of pain by the patient. He answered the question by giving his opinion upon some matters embraced in the question. The answer was stricken upon motion as not responsive. The question called for a yes or no

answer. The answer was not responsive to the question, and the ruling was correct. While we will not reverse, we do not approve the practice of striking material evidence if not responsive. See Jelos v. Oliver I. Min. Co. 121 Minn. 473, 478, 141 N. W. 843.

Some of the injuries, such as the pressure sore on the heel and consequent pain and certain stiffness in the limb after the cast was removed, were caused by the treatment employed. Defendants admittedly possess requisite skill and learning as physicians and surgeons. The question is whether or not they were negligent in applying their skill and learning in this case. Plaintiff did not produce any evidence that the practice and procedure pursued by defendants was not in accordance with usual and accepted medical standards, except that his medical expert testified that it is usual practice for doctors immediately to investigate complaints of severe pain in portions of a limb in a cast such as this and that failure to do so might result in injury to the limb. There was no proof that defendants did not investigate such complaints. Defendants showed affirmatively that they investigated the complaints, evaluated them, and did what they thought should be done under the circumstances. They admitted that the pressure sore on the heel was caused by the cast and that they neither knew nor had reason to know that plaintiff had or was getting such a sore prior to the removal of the cast. They made an opening in the first cast following such complaints and found no sore; and, when they removed it, they found no sore prior to putting on the second cast. The toes were permitted to protrude from the cast so that it could be determined if the blood circulation was all right. Frequent examination of the toes indicated good circulation and thus negatived any interference with circulation, which is the cause of pressure sores. The proof also showed without dispute that use of a Whitman cast is an approved method of treatment in such cases; that the highest degree of care was exercised in applying the cast; and that, notwithstanding such care in this case, as often happens in other cases, pressure sores unavoidably developed. A certain amount of stiffness in the knee was attributable to the cast. Such stiffness was an aftereffect of wearing the cast and resulted in this case, as it does in others,

in spite of employment of due care and the best methods of treatment. It was temporary and should disappear with the use of the limb. The pain was a necessary and unavoidable incident of wearing the cast, which defendants did everything required by proper treatment to alleviate. It is not claimed that there was any negligence in the toe operation or treatment. There was none in the setting of the bone fracture. The evidence did not show that the heel sore, consequent pain, and the leg stiffness were caused by negligence. On the contrary, they unavoidably resulted in spite of the exercise of due care. A physician or surgeon is only required to possess and exercise the degree of skill and learning ordinarily possessed by members of his school of the profession in good standing and to apply that skill and learning with reasonable care and diligence and his best judgment. Quickstad v. Tavenner, 196 Minn. 125, 264 N. W. 436; Yates v. Gamble, 198 Minn. 7, 268 N. W. 670; Williamson v. Andrews, 198 Minn. 349, 270 N. W. 6; Walker v. Holbrook, 130 Minn. 106, 153 N. W. 305; Moehlenbrock v. Parke, Davis & Co. 145 Minn. 100, 176 N. W. 169; Nelson v. Dahl, 174 Minn. 574, 219 N. W. 941; Harju v. Allen, 146 Minn. 23, 177 N. W. 1015.

■ Defendants are not liable unless the injuries complained of were the proximate result of negligent acts of defendants. Gamradt v. DuBois, 176 Minn. 312, 223 N. W. 296 (source of infection) ; Gamradt v. DuBois, 180 Minn. 273, 230 N. W. 774 (*ibid.* and care and treatment) ; Bush v. Cress, 181 Minn. 590, 233 N. W. 317; Yates v. Gamble, 198 Minn. 7, 268 N. W. 670; Williamson v. Andrews, 198 Minn. 349, 270 N. W. 6. We have examined the record. The injuries, other than the heel sore, pain resulting therefrom, and the stiffness in the leg already referred to, did not result from the treatment of the bone fracture. The arthritis had no connection with treatment for bone fracture or toe amputation because it appears from an examination on December 15, 1933, before the first cast was put on, that plaintiff had arthritis. He had it when he was admitted to the hospital. The other injuries are attributable to the toe infection, amputation, and treatment. It is not claimed that the infection spread because of any negligence in the operation or the treatment of the toe. Plaintiff's claim is that toe infection came

from the heel sore. The defendants claim that the toe infection was caused by an ingrowing toenail cut on the flesh of the toe. Plaintiff denied absolutely that he had an ingrowing toenail.- There is no evidence of any kind, lay or expert, that the heel sore was infected. It shows only a sore. A sore is not necessarily infected, and evidence must show the fact to justify a finding of infection. On the contrary, the only evidence relating to the question shows that infection of the kind in the toe develops within a few days after it enters the body and tends to spread and becomes acute, as it did in this case. The heel sore was discovered January 11, over five months prior to the toe infection, and the sore did not spread or become acute as did the toe infection. The sore steadily healed. The undisputed evidence is that the toe infection did not come from the heel sore. No causal connection having been shown between the heel sore and the toe infection, all the injuries attributable to such infection are due to causes for which defendants are not responsible.

■ Plaintiff contends that a finding of negligence would be justified as an inference of fact under the doctrine of *res ipsa loquitur*. The doctrine of *res ipsa loquitur* does not apply under the circumstances of this case. 5 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934, 1937) § 7491; Nelson v. Dahl, 174 Minn. 574, 219 N. W. 941; Johnson v. Arndt, 186 Minn. 253, 243 N. W. 67; Yates v. Gamble, 198 Minn. 7, 268 N. W. 670; see 20 Minn. L. Rev. 241.

■ Plaintiff urges, however, that the evidence showed that defendants extended the second cast over plaintiff's foot contrary to his express instruction and thereby committed a technical assault and battery. He relies upon Mohr v. Williams, 95 Minn. 261, 104 N. W. 12, 1 L.R.A.(N.S.) 439, 111 A. S. R. 462, 5 Ann. Cas. 303. Plaintiff's theory of technical assault and battery was first advanced on the motion for new trial. The amended complaint does not on its face purport to state separately a cause of action for assault and battery and a cause of action for malpractice. Paragraph III of the amended complaint narrates plaintiff's experience in the hospital and contains an allegation that plaintiff requested of the doctors "that no cast be placed on his foot as the foot was exceedingly sore"

and that the cast was applied "against his wishes and without his consent * * * and was put on his body, leg, and foot as at first." Paragraph V, alleging proximate cause, states that plaintiff's injuries resulted from "the careless, negligent, and improper application of the casts," and the paragraph continues with allegations of specific acts of negligence. The complaint and the evidence adduced at the trial show that plaintiff sought recovery on the theory that defendants were negligent in putting and leaving on the second cast, with knowledge that the cast was causing pain and discomfort and might result in pressure sores. It is obvious that plaintiff's demand that the cast should not cover his foot was alleged in the complaint and brought out at the trial to show that defendants knew the effect of the cast upon plaintiff and to make their conduct in the persistent use of the cast appear more flagrant. The memorandum of the court below clearly indicates that in passing on the motion for a directed verdict only the questions of negligence and proximate cause were considered. The complaint, the evidence, and the ruling of the court are convincing that plaintiff proceeded at the trial upon the theory that his action was one for negligence. A party must stand on the rights which he claims and asserts upon the trial. In Staloch v. Holm, 100 Minn. 276, 111 N. W. 264, 9 L.R.A.(N.S.) 712, an action for malpractice, it was held that where the sole basis of recovery is the alleged negligence of the physician and surgeon, a claim for technical assault and battery predicated upon operation without consent of the plaintiff is eliminated. In that case the trial and submission to the jury were upon the theory of negligence; here the trial and submission to the court upon the motion were solely upon the issue of negligence. The rule of the Holm case applies. The question of assault and battery never was and is not now in the case. The trial court was not requested to pass on the question of assault and battery, but only that of negligence. Our review is confined to that question. Plaintiff must stand upon the claim of negligence. He cannot on appeal urge another ground of recovery, asserted for the first time on motion for new trial. White v. Western Assurance Co. 52 Minn. 352, 54 N. W. 195; Moquist v. Chapel, 62 Minn. 258, 64 N. W. 567; Woodbridge v.

Sellwood, 65 Minn. 135, 67 N. W. 799; Wessel v. Gigrich, 106 Minn. 467, 119 N. W. 242; Lindquist v. Gibbs, 122 Minn. 205, 142 N. W. 156.

The order is affirmed.