## A. W. BONDERSON v. ROLF HOVDE AND H. L. GODS.[1]

October 28, 1921.

No. 22,299.

**Physician and surgeon — verdict sustained by evidence.**

1. The evidence sustains the jury's finding that a patient sustained injury through negligent treatment on the part of defendants.

**Verdict not excessive.**

2. The damages are not excessive.

**Charge to jury.**

3. The charge is not open to the objection that it permits recovery for injury other than that caused by the negligence of defendants.

**Cross-examination of medical experts.**

4. Wide latitude should be allowed on cross-examination of medical experts. The extent of the examination is largely in the discretion of the court. It is not reversible error to refuse to permit counsel on cross-examination to elicit an opinion based on an assumption of facts as claimed by him but not in evidence.

**Reading reporter's notes of evidence at request of jury.**

5. It is not error to permit the court reporter, at the request of the jury, to read from his notes of evidence, when the permission is exercised with fairness. There was no reversible error in this case in permitting the reporter to read evidence not pertinent to the point as to which the jury had made inquiry.

[1]Reported in 184 N. W. 853.

Actions in the district court for Sibley county, one to recover $10,000 for malpractice and the other to recover $445.95 for medical attendance, hospital fees and other expenses incidental to the treatment of plaintiff's minor child. The answers alleged that the professional treatment was rendered with due skill and care. The cases were tried together before Tifft, J., and a jury which returned a verdict for $5,000 in the malpractice case and for $400 in the other case. From an order denying their motion for a new trial, defendants appealed. Affirmed.

*Dille, Hoke, Krause & Faegre,* for appellants.

*George A. & C.-H. MacKenzie* and *P. W. Morrison,* for respondent.

HALLAM, J.

In September, 1919, plaintiff's fourteen-year-old daughter, Hazel, fell from an apple tree and sustained a fracture of the left arm near the wrist. She was taken to defendants, who are physicians and surgeons, for treatment. They examined her, reduced the fracture and put the arm in splints. She went to them for treatment from time to time during a period of about three weeks, consulting mostly with defendant Hovde. Then it developed that there were sores under the bandages and that a septic condition had set in. There was dead tissue and part of the bone was dead. Hazel thereupon received treatment from other physicians and surgeons, namely, Dr. Olson of Gaylord and Dr. Fritchie of New Ulm. As a result of the diseased condition that developed, the hand and part of the arm are deformed and Hazel has suffered permanent loss of much of the use of them. This action is brought to recover damages on the theory of malpractice. Plaintiff had a verdict for $5,000 and defendants appeal.

1. The first contention is that the evidence does not sustain the verdict. The evidence is in conflict. The claim of plaintiff is that the bandages placed on the arm by defendants were wrapped too tightly, that she complained of this from time to time, but that defendants told her it was all right. There is expert medical testimony to the effect that the tight wrapping of the bandages was a cause of the diseased condition of the arm. There are some inconsistencies in the testimony of

the witnesses for the plaintiff, and the evidence is far from conclusive, but we regard it as sufficient to sustain the jury's findings.

2. Claim is made that the damages are excessive, and in this connection it is contended that there is no proof that the loss of the portion of the bone was due to the tight bandages. We need not stop to consider whether or not the evidence contains sufficient proof on this point, for, aside from the loss of the bone, the condition of the arm is such that if liability exists at all, a verdict for $5,000 is not excessive.

3. Exception is taken to the instruction of the court that "if he is entitled to recover at all, he is entitled to recover to the extent of the injuries sustained by the child." The contention is that this permits recovery against defendants for the broken arm as well as for the alleged malpractice. The charge commences with an instruction that the action is to recover damages for the injury "alleged to be due to and caused by the negligence of the defendant," and then advises the jury that "it is the claim of the plaintiff that defendant did not properly or correctly treat the fracture," and in substance that the claim was that the effect of the treatment was to cause the necrosis or decaying and that the defendants were negligent. Then the court gave the instruction complained of and further charged the jury that they could "give no damages for any pain or suffering of the child before such time as she was attended by the defendants." We think the jury would understand from the whole charge that the only damages they could take into consideration were those resulting from the alleged negligence of defendants.

4. Plaintiff called medical experts to give opinion evidence as to the cause of the diseased condition of the arm based upon assumption of facts as shown by the testimony on behalf of plaintiff. On cross-examination defendant's counsel sought to elicit an opinion from these witnesses, based on an assumption of facts as claimed by the defendants. The facts assumed were not then in evidence. The court rejected this testimony. This is assigned as error. We think there was no reversible error. We fully agree with counsel for defendants that wide latitude should be allowed on cross-examination of medical experts, and it is altogether probable that if the court had permitted the cross-examina-

150 M.—12.

tion there would have been no reversible error. Counsel may even be permitted on cross-examination, for the purpose of testing the skill and accuracy of the expert witnesses, to ask hypothetical questions pertinent to the inquiry, assuming facts having no foundation in the evidence. Williams v. Great Northern Ry. Co. 68 Minn. 55, 70 N. W. 860, 37 L.R.A. 199. But the range of such cross-examination must rest largely in the discretion of the trial court, and we think there was no abuse of discretion in this case.

5. After the jury retired and after they had considered the case for some time, they returned to the court room and asked what Dr. Olson had testified as to the kind of bandage the child had on when she first visited his office. The court told the court reporter to read Dr. Olson's testimony on that point to the jury and this was done. However, there was some conflict between the testimony of Dr. Olson and Hazel on that point and the court said: "I think it is only fair to read the testimony of the girl in reference to the bandage at that time." The reporter evidently did not find the testimony of Hazel on this point. He read somewhat from her testimony, but read nothing on this point. The court then asked that the testimony of Dr. Hovde on this point be read and this was done. Counsel for defendants strenuously contend that the court committed error.

It is contended that it is error to permit the reading by the reporter of any testimony to the jury without the consent of the parties. We do not agree with this contention. This practice is so common and sometimes so necessary to enlighten the jury that we should encourage rather than discourage it, when permitted with such an exercise of fairness as was exhibited by the court in this case. We find nothing in G. S. 1913, § 7803, inconsistent with this rule. That section relates to the papers which the jury may take into the jury room.

It is further contended that it was error to read the testimony of Hazel bearing on other features of the case. There was no occasion for reading the testimony, but we think the reading of it was not prejudicial. There was really little dispute as to the facts stated in the testimony read.

Order affirmed.